IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

HAMPTON H. HOGG, as Guardian ad  \*
Litem for TRELLE S. PHILLIPS,
                                               \*
      Plaintiff,
                                               \*
vs.
                                               \*     CASE NO. 4:05-CV-138(CDL)

SOUTHERN FARM BUREAU LIFE      \*
INSURANCE COMPANY,
                                               \*
      Defendant.
                                               \*

O R D E R

This lawsuit arises from Trelle S. Phillips's purchase of a whole life insurance policy from Defendant.[1] Plaintiff claims that Defendant violated its fiduciary duty to Phillips by selling her the policy. Plaintiff seeks recovery of the premiums paid to Defendant by Phillips as well as punitive damages.[2] This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Presently pending before the Court is Defendant's Motion for Summary Judgment (Doc. 33). Since the Court finds that Defendant did

---

[1]This action was originally filed on Plaintiff's behalf by Plaintiff's son, Hampton H. Hogg. Finding that Trelle S. Phillips was the real party in interest, the Court previously ordered that she be added as an indispensable party. To address the concern that she was not competent to pursue the claim because of her dementia, the Court appointed Hogg as her guardian ad litem to pursue this claim.

[2]Although Plaintiff initially asserted claims under the Unfair Trade Practices Act, O.C.G.A. § 33-6-4, and the Elder Persons Protection Act, O.C.G.A. § 30-5-1, those claims have been withdrawn. (*See* Pls.' Br. Resp. to Def.'s Mot. Summ. J. 19-20, Dec. 22, 2006.)

not breach a duty owed to Plaintiff Phillips as her alleged fiduciary, Defendant's Motion for Summary Judgment is granted.

FACTUAL BACKGROUND

In December 1996, Trelle S. Phillips ("Phillips") met with her nephew, John W. Andrews ("Andrews"), to discuss the possibility of purchasing a life insurance policy for the benefit of her son, Hampton H. Hogg ("Hogg"). At the time of their meeting, Phillips was an eighty-year-old woman living in Montgomery, Alabama and Andrews was employed by Defendant as an insurance sales agent. When Phillips requested that Andrews assist her in obtaining $100,000 in coverage, he advised Phillips that he could sell her the policy, but "that the premiums would be high due to her advanced age." (Andrews Aff. ¶ 6, May 23, 2006.) When Phillips indicated her desire to proceed, Andrews assisted her with an application for $100,000 in coverage.

After completing the process of underwriting the application, Defendant advised Andrews that Philips's premiums for the requested amount of coverage would cost $17,746 per year. (*Id.* at ¶ 10.) Andrews claims that he "contacted [Phillips] and told her that [he] felt the premiums . . . were too high for her to consider purchasing the policy[,]" and that "she did not have to buy any life insurance from [him.]" (*Id.* at ¶¶ 10, 12.) He also claims that Phillips "insisted that she wanted to buy the policy so that she would have some money for her son that he could not access immediately[,]" and that she "requested that the face amount . . . be reduced to

2

$50,000." (*Id.* at ¶¶ 12, 11.) Defendant issued Policy No. 2610437 ("the Policy") on February 13, 1997. The Policy has a $50,000 face value, annual premiums of $8,920.50, and at the time of sale listed Phillips as the policy owner and Hogg as the insurance beneficiary.[3]

Andrews delivered the Policy to Phillips on March 15, 1997. Hilda Sawyer, Phillips's sister, accompanied Andrews on this visit. Ms. Sawyer recalls that Andrews "delivered the [P]olicy . . . and went over it with [Phillips,]" and that "[a]t both the time she went through the application and when [Andrews] delivered the [P]olicy, [Phillips] was competent, and understood what she was doing. She was under no duress on either occasion." (Sawyer Aff. ¶ 3, Nov. 27, 2006.) According to Andrews, he informed Phillips "that dividends would accumulate annually, and that such dividends could be applied to reduce the amount of premium due." (Andrews Aff. ¶ 20.) Andrews contends that his aunt called him every year to inquire about "the amount of dividends that could be applied to the premium[,]" and that Phillips "would then remit a check for the balance of the premium required to keep the [P]olicy in force." (Andrews Aff. ¶¶ 21, 22.)

Hogg first learned of the Policy in late 2004, when he began to manage his mother's affairs. By that time, Phillips had paid to Defendant approximately $62,443.50 in insurance premiums. Hogg wrote to Defendant in February 2005 requesting that Defendant rescind the Policy and refund the premiums. The letter expressed Hogg's opinion

---

[3] On July 8, 1998, Phillips executed a request to change ownership of the Policy to her son, Hogg.

3

that there was "no reason why the [P]olicy should have been sold to [his] mother." (Hogg Depo. Ex. 17, May 30, 2006.) In response to this letter, Defendant mailed to Phillips a Compliance Questionnaire, asking that she provide her perspective on the circumstances surrounding the sale of the Policy. Phillips indicated that she "initiated the sale of the [P]olicy" because she "thought [she] could have used the [P]olicy[.]" (Mem. Supp. Def.'s Mot. Summ. J. Ex. A, Dec. 4, 2006.) With respect to the service she received from Andrews, Phillips noted that "Mr. Andrews is [her] nephew . . . and [she] thinks he is an . . . *honest* and a good *business man* and a wonderful nephew!" (*Id.*) She indicated that Andrews fully explained the Policy at the time of purchase, that she understood the Policy at the time of purchase, and that she did not feel that Andrews misrepresented the Policy at the time of purchase. (*See id.*) Phillips's neighbor, Kathleen N. Wilkowske, witnessed Phillips sign the questionnaire. Ms. Wilkowske noted that Phillips "was competent and capable of answering the questions as shown on the document and no one other than [Ms. Wilkowske] was present when she signed the document. She was under no duress or outside influence at the time she signed the document." (Wilkowske Aff. ¶ 4, June 13, 2006.)

Phillips is now ninety-one years old and suffers from dementia. Her son, Hogg, filed this action to challenge Defendant's right to retain the premiums paid toward the Policy. The Court subsequently added Phillips as the real party in interest and appointed Hogg as

4

her guardian ad litem to pursue this action. Plaintiff contends that Defendant's agent, Andrews, was in a relationship of confidence and trust at the time he sold Phillips the Policy. Plaintiff further contends that Defendant is liable because Andrews had a conflict of interest as Phillips's fiduciary, that he violated his fiduciary duty to Phillips, and that Phillips therefore is entitled to rescind the Policy and recover the premiums she paid on the policy.

Defendant responds that it never occupied a fiduciary position regarding Phillips, that if a fiduciary relationship existed, there was no breach of fiduciary duty, and that it may not be held liable for the breach of any duty that Andrews may have owed to Phillips. Defendant further contends that no genuine issues of material fact exist to be tried and that it is therefore entitled to summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This may be accomplished by showing that the nonmoving party will be unable to "establish the existence of an element essential to [the nonmoving]

party's case, and on which [the nonmoving] party will bear the burden of proof at trial." *Id.* at 322.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). There is a genuine issue if the combined body of evidence, viewed in the light most favorable to the nonmoving party, would allow a reasonable jury to find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, the relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

DISCUSSION

To survive summary judgment, Plaintiff must demonstrate that a genuine issue of material fact exists as to whether Defendant breached a fiduciary duty owed to Phillips. "[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler*, 260 Ga. App. 443, 445, 579 S.E.2d 848, 850 (Ga. Ct. App. 2003). Plaintiff alleges that Defendant is obligated to return the premiums paid on the Policy because: (1) Defendant's agent, Andrews, had a confidential and fiduciary relationship with Phillips; (2) Andrews's relationship with Phillips required him to place Phillips's interest above his own; and (3)

Andrews, acting as Defendant's agent, breached this duty by selling Phillips a life insurance policy with inflated premiums. In short, Plaintiff contends that Defendant is liable because its agent, Andrews, had a conflict of interest and should not have sold the Policy to Phillips.

Defendant argues that it is entitled to summary judgment because Plaintiff has failed to demonstrate either (1) that Defendant owed a duty to Phillips as her fiduciary or (2) that Defendant may be held liable for any breach of a fiduciary duty that Andrews owed to Phillips.

Generally, under Georgia law, "[t]here is no fiduciary relationship existing between an insured and an insurer or the insurer's agent." *Hyde v. Acceleration Life Ins. Co.*, 211 Ga. App. 153, 154, 438 S.E.2d 385, 387 (Ga. Ct. App. 1993) (*citing Stewart v. Boykin*, 165 Ga. App. 868, 871, 303 S.E.2d 50, 53 (Ga. Ct. App. 1983)). Plaintiff alleges, however, that the circumstances in this case take it outside this general rule. Specifically, Plaintiff contends that the insurer's agent, Andrews, *was* in a confidential and fiduciary relationship with the insured, Phillips, and that he breached his duties as his aunt's fiduciary. The Court is skeptical as to whether any fiduciary relationship existed between Phillips and Andrews, but the Court finds that it is unnecessary to decide that issue to resolve the present motion. Pretermitting whether such a relationship existed, the Court finds that Plaintiff has not produced sufficient

evidence from which a reasonable jury could conclude that either Andrews or Defendant breached any duty arising from any such relationship. Therefore, Defendant is entitled to summary judgment.

Plaintiff contends that Andrews breached his duties as Phillips's alleged fiduciary both by selling her the Policy and by collecting the allegedly inflated premiums. Specifically, Plaintiff alleges that the Policy was "unsuitable" for Phillips, that Andrews was aware of this fact, and that he merely sold her the Policy in order to win a trip for himself to Germany. The evidence in the record does not support Plaintiff's contentions.

First, Plaintiff has presented no evidence to contradict the fact that at the time Phillips purchased the Policy she was "mentally alert and competent and capable of managing her affairs" and that she never expressed displeasure over owning the Policy. (*See* Wilkowske Aff. ¶ 3, June 13, 2006; Sawyer Aff. ¶ 4, Nov. 27, 2006.) Her sister personally observed Phillips "[a]t [] the time she went through the application and when [Andrews] delivered the [P]olicy," and noted that Phillips "was competent, [] understood what she was doing[, and] was under no duress on either occasion." (Sawyer Aff. ¶ 3.) As owner of the Policy, Phillips enjoyed a ten-day right to examine and would have received a full refund of the premiums if she were dissatisfied with the contract terms. Philips did not rescind the Policy, but continued to pay her annual premiums to keep the Policy in force. In fact, the evidence shows that Phillips inquired every year about the amount of

dividends paid on the Policy that could be applied to the premium, and remitted a check for the balance. Additionally, the record establishes that Phillips purchased a second whole life insurance policy, in the amount of $100,000, from New York Life Insurance Company in October 1998. (Donaldson Aff. ¶ 6, Dec. 19, 2006.) The fact that she purchased additional life insurance coverage after she purchased the Policy from Andrews negates the argument that Andrews's sale of the Policy constituted a breach of his fiduciary duties. The uncontradicted evidence establishes that Phillips was a competent adult who clearly intended to purchase the Policy and wished for it to remain in effect.[4]

As Defendant aptly notes, "the basis for . . . this lawsuit appears to be [Hogg's] opinion that the transaction should now be voided[] . . . simply because Phillips lived beyond the point in time where the premiums eventually exceeded the death benefit." (Mem. Supp. Def.'s Mot. Summ. J. 10, Dec. 4, 2006.) The policy may not be voided simply because Phillips may have made what turned out in hindsight to be a bad bargain. She knowingly agreed to pay certain premiums in exchange for the payment of a death benefit upon her death. It is undisputed that the Policy will in fact pay the contracted benefit upon the death of Phillips. The fact that

---

[4] Hogg places great significance on the fact that he was unaware of the Policy until he began to manage his mother's affairs in late 2004. However, this fact is irrelevant to the issue of whether Andrews breached a duty to Phillips at the time he sold the Policy nearly seven years earlier.

9

Defendant may have calculated that Phillips may live long enough to pay premiums in excess of the death benefits is a part of the risk that is involved in every decision to purchase and sell life insurance policies. This fact certainly does not give rise to the breach of any alleged fiduciary duty. Moreover, the fact that the salesman in this case happened to be the insured's nephew does not convert an otherwise legitimate insurance transaction into a breach of fiduciary duty.

The Court finds that no genuine issue of material fact exists to be tried, and that Defendant is entitled to judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment is granted.[5]

## CONCLUSION

Defendant's Motion for Summary Judgment (Doc. 33) is granted.

IT IS SO ORDERED, this 13th day of July, 2007.

                                      S/Clay D. Land
                                        CLAY D. LAND
                        UNITED STATES DISTRICT JUDGE

---

[5] Since the Court finds that Plaintiff is not entitled to recover damages on her claim for breach of fiduciary duty, she is barred from recovering punitive damages and Defendants are entitled to summary judgment on this claim as well. *See J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, __ S.E.2d __, Nos. A06A2295, A07A0096, 2007 WL 900985, at *7 (Mar. 27, 2007) (noting that punitive damages "are not recoverable [where] substantive claims have failed"); *Barnes v. White County Bank*, 170 Ga. App. 681, 681, 318 S.E.2d 74, 75-6 (1984) ("Punitive damages may not be recovered where there is no entitlement to compensatory damages.").